IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JACQUELINE ELLINGTON, on behalf of )
C.K.S., )
 )
        Plaintiff, )
 )   CIVIL ACTION NO. 2:15-cv-479-TFM
    v. )
 )
CAROLYN W. COLVIN, )
Acting Commissioner of Social Security, )
 )
        Defendant. )

## MEMORANDUM OPINION

### I. INTRODUCTION

Plaintiff Jacqueline Ellington ("Plaintiff" or "Ellington") filed this lawsuit on behalf of

her child, C.K.S., challenging a final judgment by Defendant Carolyn W. Colvin, Acting

Commissioner of Social Security, in which she determined that C.K.S. is not disabled and

therefore not entitled to child supplemental security income benefits since the alleged disability

date of May 15, 2009. This case returns to the court after it was remanded to the agency three

years ago.[1] R. 387-415 (*Ellington v. Astrue*, 2:12-cv-259-TFM, 927 F. Supp.2d 1257 (M.D. Ala.

Feb. 26, 2013)). On remand, another hearing was held, and a new decision was issued by a

different Administrative Law Judge ("ALJ"). Following the hearing, the ALJ determined that

C.K.S. is not disabled. The Appeals Council rejected a subsequent request for review. The ALJ's

decision consequently became the final decision of the Commissioner of Social Security

---

[1] The history of this case goes back farther. C.K.S. was born on September 2, 1999. R.
95. He was first denied benefits in 2007, then 2008, and 2010. R. 286. *See also Ellington o/b/o
C.S. v. Astrue*, 2:07-cv-789-CSC, 2008 WL 1805435 (M.D. Ala. Apr. 18, 2008) (remanding).
The current case concerns the agency's denial of benefits in 2009, which an ALJ affirmed in
2010, and this Court remanded in 2013. R. 286.

("Commissioner"). *See Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir. 1986).

The parties have consented to the undersigned United States Magistrate Judge rendering a final judgment in this lawsuit pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1. The court has jurisdiction over this lawsuit pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons that follow, the court concludes that the Commissioner's decision denying C.K.S. supplemental security income benefits should be **REVERSED** and **REMANDED** to the Commissioner to **AWARD BENEFITS**.

## II. STANDARD OF REVIEW

An individual under 18 is considered disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I) (2012); *see also* 20 C.F.R. §§ 416.906, 416.911 (defining "disability" and "disabling impairment" for children);  The sequential analysis to determine if a child claimant is disabled is as follows:

> 1. If the claimant is engaged in substantial gainful activity, he is not disabled.
>
> 2. If the claimant is not engaged in substantial gainful activity, the Commissioner determines whether the claimant has a physical or mental impairment which, whether individually or in combination with one or more other impairments, is a severe impairment. If the claimant's impairment is not severe, he is not disabled.
>
> 3. If the impairment is severe, the Commissioner determines whether the impairment meets the durational requirement and meets, medically equals, or functionally equals in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment satisfies this requirement, the claimant is presumed disabled.

*See* 20 C.F.R. § 416.924(a)-(d) (2015).

The Commissioner's regulations provide that if a child's impairment or impairments are not medically equal, or functionally equivalent in severity to a listed impairment, the child is not disabled. *See* 20 C.F.R. § 416.924(d)(2). In determining whether a child's impairment functionally equals a listed impairment, an ALJ must consider the extent to which the impairment limits the child's ability to function in the following six "domains" of life: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. *Shinn ex rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1279 (11th Cir. 2004); 20 C.F.R. § 416.926a(b)(1). A child's impairment functionally equals a listed impairment, and thus constitutes a disability, if the child's limitations are "marked" in two of the six life domains, or if the child's limitations are "extreme" in one of the six domains. *Shinn*, 391 F.3d at 1279; 20 C.F.R. § 416.926a(d).

In reviewing the Commissioner's decision, the court asks only whether the findings concerning the steps are supported by substantial evidence. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Substantial evidence is "more than a scintilla," but less than a preponderance: it "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (quotation marks omitted). The court "may not decide the facts anew, reweigh the evidence, or substitute . . . [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quotation marks omitted). "The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates

reversal." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (quotation marks and citation omitted).

### III. COMMISSIONER'S DECISION AND ISSUES

**A.     The Commissioner's Decision**

Ellington protectively filed for supplemental security income, alleging that on May 15, 2009, C.K.S. became disabled due to autism and severe asthma. R. 114. C.K.S. was a school-age child of 9 when he applied for benefits in May 2009. *See* 20 C.F.R. § 416.926a(g)(2)(iv) (2015) (school age is age 6 to attainment of age 12). He was an adolescent of 15 on April 27, 2015, the date of the ALJ's decision after remand. *See* 20 C.F.R. § 416.926a(g)(2)(v) (2015) (adolescent is age 12 to attainment of age 18). R. 289, 314.

In remanding the case, the court directed the ALJ to resolve inconsistencies and fully consider and develop the record on the question whether C.K.S. meets, medically equals, or functionally equals a Listing, and it directed the ALJ to substantiate the weight given to C.K.S.'s treating physicians. R. 405-14.

On remand, the ALJ followed the regulations' required three steps when he analyzed C.K.S.'s claim and concluded that C.K.S. is not disabled and, therefore, denied his claim for supplemental social security benefits. At step one, the ALJ found that C.K.S. has not engaged in substantial gainful activity. R. 289. At step two, the ALJ found that C.K.S. suffers from the severe impairments of psychotic disorder, not otherwise specified ("NOS"); and conduct disorder with an impulsive characteristic versus attention deficit hyperactivity disorder ("ADHD"). R. 289. At step three, the ALJ found that C.K.S.'s impairments did not meet or medically equal in severity the criteria for any impairment listed at 20 C.F.R., part 404, Subpart P, Appendix 1. R. 290-92. The ALJ also concluded that C.K.S.'s impairment did not functionally equal a listing. R.

293-314. Consequently, the ALJ determined, C.K.S. has not been disabled since May 26, 2009, the date the application was filed. R. 92, 314.

**B.      Plaintiff's Claims**

Ellington presents the following claims:

1)      The Commissioner's decision should be reversed because the ALJ's functionality findings lack substantial evidence.
2)      The Commissioner's decision should be reversed because the ALJ erred as a matter of law in failing to discuss, much less consider, the side effects from C.K.S.'s medications as required.

Pl.'s Br. 3, Doc. No. 15.

## IV. DISCUSSION

**A.      The ALJ's Functionality Findings Lack Substantial Evidence**

Ellington argues the ALJ repeated the same error in the decision after the rehearing as was made previously regarding the opinion of C.K.S.'s teacher, Mr. Dees. Pl.'s Br. 4-5, Doc. No. 15. Ellington argues the ALJ's functionality[2] findings lack substantial evidence, and C.K.S. would have been found disabled if the areas of function had been properly evaluated. Pl.'s Br. 11, Doc. No. 15. Ellington argues the ALJ committed reversible error, and, coupled with the identical mistakes made in both decisions, Ellington asks the court to reverse the Commissioner's decision or remand for proper evaluation of the six functional domains. Pl.s' Br. 11, Doc. No. 15.

**1.      The First ALJ's Findings Regarding C.K.S.'s Teacher**

In the order remanding, this Court first quoted the ALJ's reasoning for giving the opinion of C.K.S.'s special education teacher only some weight when the ALJ determined that C.K.S. had a less than marked limitation in the domain of acquiring and using information. The ALJ at

---

[2]Ellington does not challenge the ALJ's decision that C.K.S.'s impairments did not meet or medically equal a listing. Pl's Br. 3-11; R. 289-92.

the earlier hearing reasoned:

> . . . [T]he undersigned has considered the Teacher Questionnaire from Mr.
> Dees (Exhibit B13E). In doing so, the undersigned notes that Mr. Dees
> opined that the claimant has problems in multiple domains. However, Mr.
> Dees noted that the claimant has a personal aide and the IEP noted that the
> claimant's mother often attends the classroom as well as to assist the
> claimant. Mr. Dees himself noted that the claimant becomes
> violent/combative with peers and the teacher *if someone is not sitting with
> him*, but the record suggests that the aide of the claimant's mother always
> accompanies the claimant. With the added assistance, it seems highly
> unlikely that the claimant functions within the limitations opined by Mr.
> Dees; this is supported by the notation on the IEP that states the claimant
> is more focused on his lessons and school rules with the presence of the
> mother and the aide (Exhibit B13E). Therefore, the undersigned gives only
> some weight to the opinion of Mr. Dees.

R. 410-11 (emphasis in the Court's prior ruling, quoting the prior record). This Court then

pointed out the faulty logic of that reasoning:

> The ALJ's reason for rejecting the findings of Mr. Dees rests upon faulty logic.
> Because a professional and/or parent must assist C.K.S. in the classroom at all
> times in order for him to remain focused on a lesson, it is logical to conclude that
> C.K.S.'s *ability to acquire and use information on his own is at least markedly to
> severely limited.*

R. 411 (emphasis added).

## 2.    The Second ALJ's Findings Regarding C.K.S.'s Teacher

The most recent decision by the ALJ again gives only some weight to the opinion of Mr.

Dees, using the exact same language and reasoning that the Court found faulty in the prior order.

R. 302. Adding to its prior reasoning, the ALJ then states:

> The undersigned notes that Mr. Dees opined very serious problems in the
> claimant's ability to interact and relate to others and care for himself. While the
> undersigned acknowledges the claimant has some problems, the evidence is not
> consistent with such extreme limitations; otherwise the claimant would have been
> expelled from school or he would have been referred for inpatient psychiatric
> treatment. Overall, this opinion is somewhat consistent with the medical and
> educational evidence of record and afforded some weight (Ex. B13E).

R. 302. This additional reasoning suffers from the same faulty logic as the prior reasoning. The

likelihood that C.K.S. would be expelled from school was ameliorated by the presence of his mother or a paraprofessional aide in the classroom. While being expelled or referred for inpatient psychiatric treatment certainly would tend to demonstrate an extreme limitation in one or more of the domains, neither the ALJ nor the Commissioner cites any authority that a child must show such evidence to demonstrate an extreme limitation.  Ellington argues, and the Commissioner does not dispute, that C.K.S.'s assistance of a paraprofessional or parent in the classroom would be like an accommodation under the Americans with Disabilities Act ("ADA"), though the issue of reasonable accommodation for C.K.S. under the ADA is not the same as the question whether C.K.S. qualifies for social security disability benefits. Pl.'s Br. 5; *see also Cleveland v. Policy Management Systems*, 526 U.S. 795, 802-03 (1999) (courts should not presume ADA and SSDI claims cannot coexist); SSR 00-1c, 2000 WL 38896 (Jan. 7, 2000) (implementing *Cleveland*).

In its prior order, this Court stated the evidence from Mr. Dees logically supported a finding that C.K.S.'s ability to acquire and use information was at least marked to severely limited. R. 411. The reasoning of the most recent administrative decision does not change that prior ruling. In addition, in the previous order, the Court recognized that the ALJ found C.K.S. has marked limitations in interacting and relating with others, and the Court added, "[g]iven the overwhelming evidence of C.K.S.'s aggressive behavior, it is arguable that C.K.S.'s limitations in interacting and relating with others is severe." R. 411. Thus, the Court recognized that C.K.S. had marked and arguably severe limitations in interacting and relating with others. *See* 20 CFR 416.906 (defining disability for children as an "impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted K.S.'s significant problems in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others continued from 2011

through 2014. or can be expected to last for a continuous period of not less than 12 months").

C. In January 2012, he was suspended for a day after being disrespectful to teachers and arguing with his peers. R. 511. At an August 19, 2013, psychiatric examination, David D. Hall, D.O., reported in C.K.S.'s history that he had "disrupted academic environment and destroyed property," and C.K.S. "requires a full time aid at school." R. 551. Dr. Hall also reported C.K.S. had symptoms of psychotic process, inappropriate affect, his behavior suggested auditory hallucinations were occurring, his thinking was tangential, he was easily distracted, his insight into his problems appeared to be poor, and his social judgment appeared to be poor, but his condition did not allow cognition to be formally tested. R. 551-52. He diagnosed C.K.S. with psychotic disorder NOS. R. 552.

Although his symptoms improved in subsequent visits that fall, Ellington reported on January 27, 2014, to Shirah D. Arnold, M.S., that she was having a hard time getting C.K.S. to take his medication, that he was having temper outbursts, was argumentative, actively defying and refusing to comply with adult's rules, having hallucinations, and that his behavior worsened after finding a deceased person in a car. R. 546-50. C.K.S. denied these symptoms, R. 546, and that same day, Walter J. Cook, M.D., examined C.K.S. and noted he had an appropriate affect, normal mood, and no symptoms of psychotic process. R. 544. Dr. Cook noted that C.K.S. "has been restless, suggestive of anxiety. There are no signs of hyperactive or attentional difficulties. He is easily distracted. [He] made poor eye contact during the examination." R. 544. Dr. Cook indicated a diagnosis of psychotic disorder NOS. R. 544. Nevertheless, on January 27, 2014, and February 10-11, 2014, C.K.S. again was suspended from school. R. 503-04.

At a visit on April 17, 2014, with Shirah D. Arnold, Ellington reported that the school suspended C.K.S., that he exhibited signs of psychotic and defiant behavior, he had a suspicious

demeanor and hallucinations, that he refused to take medication and had side effects of illness from the medication, as well as increased irritability and anger. R. 574. That same day, however, notes by Francisco Huidor, M.D., indicate that C.K.S. refused to take his medication as well as that his medication was regularly taken. R. 575. Dr. Huidor switched C.K.S.'s medication to Paxil, a mood stabilizer. R. 575. Dr. Huidor also noted that C.K.S.'s mood was euthymic, he was well groomed, his associations were intact, he was fully oriented, he denied hallucinations, there was no apparent thought disorder, cognitive functioning and insight were intact, and he exhibited no signs of attentional or hyperactive difficulties. R. 575. Still, Dr. Huidor diagnosed C.K.S. with psychotic disorder, NOS, and asked him to return in a month. R. 575.

At the administrative hearing, Ellington testified that C.K.S. was distracted, off task, could not get along with others, and there were times during the 2013 to 2014 school year that the principal did not suspend C.K.S. but instead "would call it a couple days break when he feel like he's getting stressed or something. He'll just say take him home for a couple of days and bring him back." R. 331-33. Ellington testified that C.K.S. needed an aide with him throughout the school day, including lunch and recess; that without the aide, C.K.S. would not stay on task; and sometimes even the aide could not get C.K.S. to complete tasks. R. 329-30. C.K.S. continued to have special education assistance during the 2014 to 2015 school year. R. 525-34.

In contrast to this evidence and the internal contradictions in it, the ALJ focused on the reports of C.K.S.'s better behavior and mental health, his failure to comply with treatment, and the opinion of a nonexamining reviewing mental health consultant, Doug McKeown, PhD. R. 289, 297-301, 304, 307-09, 311. When discounting a claimant's testimony for noncompliance, an ALJ should give the claimant or beneficiary "an opportunity to fully express the specific reason(s) for not following the prescribed treatment. Detailed questioning may be needed to

identify and clarify the essential factors of refusal." SSR 82-59, 1982 WL 31384, at *2 (Aug. 20, 1980); *see also Lucas v. Sullivan*, 918 F.2d 1567, 1572 (11th Cir. 1990) ("the Secretary may not deny SSI disability benefits on the basis of noncompliance with treatment unless it is shown that compliance would restore the claimant's ability to work"). The Commissioner must give the individual "an opportunity to undergo the prescribed treatment or to show justifiable cause for failing to do so." SSR 82-59, 1982 WL 31384, at *5. But the ALJ did not do so in this case. For all these reasons, the ALJ's findings regarding the functional domains are not supported by substantial evidence.

Instead, it is clear on this record that C.K.S. has extreme limitations in at least the domain of acquiring and using information, and he has a medically determinable impairment that causes marked and severe functional limitations expected to last continually for at least 12 months. *See* 42 U.S.C. § 1382c(a)(3)(C)(I) (2012); *see also* 20 C.F.R. §§ 416.906, 416.911. Given the evidence in this case and its history, a remand for more evidence and analysis would only delay the receipt of benefits to which the claimant is entitled. *See Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993) (reversal with award of benefits appropriate where the Commissioner has already considered the essential evidence, and it is clear that the evidence establishes disability without any doubt); *see also Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988) (failure to apply correct legal standards is grounds for reversal and award of benefits).

**B.      The ALJ Failed to Properly Consider the Side Effect of Medications**

The Court has considered Plaintiff's additional argument that the ALJ failed to properly discuss or consider the side effects of C.K.S.'s medications. Pl.'s Br. 11, Doc. No. 15 (citing 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv); SSR 96-7p; SSR 96-8p). The Court agrees with Plaintiff, and this ground lends additional support to the Court's decision to award benefits. The

ALJ has a basic duty to fully develop the record, even if the Plaintiff is represented by counsel. *See Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) (explaining that a hearing before the ALJ is not an adversarial hearing; therefore, the ALJ has a "basic obligation to develop a full and fair record . . . This duty requires the ALJ to 'scrupulously and conscientiously prove into, inquire of, and explore for all the relevant facts") (further quotation marks and citations omitted). SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ must make a finding regarding the alleged side effects of prescription medications on C.K.S., and the absence of a finding does not permit the court to determine whether the ALJ's decision is supported by substantial evidence. *See Harris v. Astrue*, 2:09-CV-00765-TFM, 2010 WL 3583047, at *7 (M.D. Ala. Sept. 7, 2010) (citing *McDevitt v. Comm. of Soc. Sec.*, 241 F. App'x 615, 619 (11th Cir. 2007)); *see also* SSR 96-7p, 1996 WL 374186. Although it is not appropriate for this court to assume the ALJ's role, this court will uphold the ALJ's decision even if the reasoning is not ideally clear, but the ALJ must give some indication that he considered the side effects of the medications on C.K.S. *Id.* (citations omitted).

The ALJ addressed the side effects of C.K.S.'s medication primarily when the ALJ discussed the domain of health and physical well-being. The ALJ stated, "Finally, the record does not demonstrate chronic significant medication side effects causing continuous restriction in this domain." R. 312. The ALJ's decision constitutes legal error in several respects. The ALJ's sentence is a conclusory indication that the ALJ considered the side effects of medication on the domain of health and physical well-being. In this regard, the one-sentence analysis is only marginally better than "nothing at all," as the undersigned found in *Harris*, 2010 WL 3583047, at *7. The ALJ gives no indication of the nature of the side effects or his reasons for discounting them or the credibility of the subjective symptoms. *Cf. Jackson ex rel. D.T.J. v. Colvin*, 2:13-CV-

442-MEF, 2014 WL 3955218, at *4 (M.D. Ala. Aug. 13, 2014) (recommending remand where claimant alleged side effects from medications, but ALJ did not state reasons for an adverse credibility findings regarding certain domains of functioning). In discussing the domain of interacting and relating with others, the ALJ quotes a statement in a September 3, 2013, progress note that C.K.S. "reports no side effects and none are in evidence," but the ALJ omits a statement from the same paragraph of the progress note that "Abilify upsets his stomach." R. 308, 550. The ALJ makes no other mention of the side effects of medication.

It is troubling that the ALJ repeatedly focused on C.K.S.'s failure to comply with treatment and medication, but the ALJ never mentioned that C.K.S. did not like to take his medication because of the side effects it caused, and the ALJ did not inquire why C.K.S. was noncompliant with his treatment. The ALJ gave great weight and "relied significantly" on the opinion of the nonexamining consultant, Dr. McKeown, R. 290, 304, who gave the opinion that C.K.S. had a "good response when compliant," but "when not compliant, outbursts occur," that "his impairment exists but responds to treatment," and he has a "good response to treatment when compliant," R. 589-91. The ALJ stated that Ellington "acknowledged that she has difficulty getting her son to take his medication," that her son was advised to get injections, but he started taking his medication again. R. 295. In fact, at the hearing, Ellington stated that C.K.S. had been on the new medicine "for a minute . . . . [s]o now that he's taking it, they're not going to put him on the shot." R. 337. The ALJ stated twice that Ellington admitted in January 2014 that she was "'having a hard time' with getting the claimant to take his medication" and that his "medication compliance has been 'irregular.'" R. 299, 308-09. However, at the January 14, 2014, visit, Walter J. Crook, M.D., noted that Ellington was "having a hard time getting pt. to take Zyprexa at night; *he states it makes him tired the next day*." R. 544 (emphasis added). In

assessing C.K.S.'s domain of acquiring and using information, the ALJ wrote that "with medication compliance, the claimant's functioning improves." R. 305. In assessing the domain of interacting and relating with others, the ALJ reported that at C.K.S.'s April 17, 2014, visit with Shirah D. Arnold, M.S., C.K.S.'s medical compliance was "erratic" because he "refused to take (his) medication." R. 309, 574. But the ALJ omitted that at the same April 17, 2014, visit, Ellington "reported current medication *make[s C.K.S.] ill*." R. 574 (emphasis added). Also on April 17, 2014, Francisco Huidor, M.D., made inconsistent statements regarding C.K.S.'s medication and behavior. Dr. Huidor noted that "[m]edication has been regularly taken and behavior has been stable and unremarkable. Patient describes no side effects and none are in evidence." R. 575. Yet Dr. Huidor also noted that Ellington stated C.K.S. was "recently suspended," and the "*morning medicine makes him dizzy and stomach ache*." R. 575 (emphasis added). The school records from the spring of 2014 bear out C.K.S.'s behavioral problems, including suspensions for behavior in January 2014 and February 2014. R. 499, 503-04. C.K.S.'s behavior issues continued into the 2014 to 2015 school year, as demonstrated in his Individualized Education Program ("IEP"). R. 525-26. The ALJ stated the most recent school record indicates progress . . . with medication compliance and treatment," R. 309, but at the time of the administrative hearing, C.K.S. was only two weeks into the school year. R. 323. Even on the Disability Report, Ellington stated that Risperdal gave C.K.S. stomach pain and headaches. R. 116. The ALJ did not consider the side effects of the medication or whether C.K.S.'s noncompliance was justified, and the ALJ did not resolve the inconsistencies in the record. If the ALJ considered them and made credibility determinations, there is no indication from the decision that he did. *See Harris*, 2010 WL 3583047, at \*7. For these reasons, the court concludes the Commissioner erred as a matter of law.

**V. CONCLUSION**

This is the third time this claimant has come before the Court, and the Commissioner failed to apply the law correctly each time. Given the delay in his case after the last remand, it is likely he will no longer be a child when the Commissioner reviews his case the next time. For the reasons explained, this claimant must be held disabled, and the case is at an end. *See Davis*, 985 F.2d at 534 (Commissioner "has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt").

Accordingly, this case is REVERSED and REMANDED to the Commissioner with instructions to award benefits for the claimant.

A separate judgment will be entered.

Done this 17th day of August, 2016.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE